IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERNICE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09 C 7280 |
| ) | |
| KATHLEEN SIBELIUS, Secretary, U.S. ) | |
| Department of Health and Human Services, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Bernice Smith has sued her former employer, the Secretary of the Department of Health and Human Services ("HHS"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16. Smith claims that her HHS supervisors discriminated against her because of her race (African-American) and gender and retaliated against her after she complained about this alleged discrimination. HHS moved for summary judgment. For the reasons stated below, the Court grants the motion.

### Facts

In October 2001, Smith began working for HHS as an administrative officer in the Office of Investigations – part of the Office of Inspector General – at the GS-9 pay grade level. David Krupnick became Smith's immediate supervisor shortly thereafter. Krupnick promoted Smith to GS-11 pay grade level in late 2002.

Smith claims that her conflicts with HHS supervisors began in 2004. Scott Vantrease, a higher level manager at HHS, asked Smith to attend a disciplinary

telephone meeting involving Cynthia Wade, an African-American employee. Smith refused, stating that her job duties did not require her to attend such a meeting. Smith felt that she was being asked to attend the meeting solely because of her race. She claims that Vantrease became upset at her refusal and began to influence Krupnick to take actions against her.

On January 18, 2005, Krupnick notified Smith that he had proposed a three-day suspension because she allegedly failed to work a full work day on at least thirty-five occasions between September 22, 2004 and November 22, 2004. In this notice, Krupnick explained that a pass card needed to be swiped each time an employee enters or leaves the work area. He claimed that Smith's pass card activity showed that she had left the office forty minutes to 150 minutes early at least eighteen times during the sixty-day period at issue and that she had arrived ten minutes to 120 minutes late to work at least seventeen times during the same period. (Smith contends that Vantrease provided the pass card records to Krupnick.) Krupnick also described two meetings at which he had given Smith an opportunity to explain this conduct and she was unable to provide a satisfactory explanation. The notice also asserted that Smith's conduct was particularly egregious because her employment duties included administering other employees' time and attendance. Smith filed a response to Krupnick's allegations.

Assistant inspector general Martin Campbell reviewed the matter and decided that a suspension without pay was appropriate, though he reduced the suspension to two days because it was theoretically possible for an employee to enter or leave the work place without swiping her security card when another employee had opened the door.

On April 27, 2005, Smith contacted an internal EEO counselor to complain about discrimination. This process was interrupted so that alternative dispute resolution could be pursued, but that ultimately failed. On December 27, 2005, Smith filed a formal EEO complaint. It was dismissed on April 13, 2006 but was reinstated on appeal on September 15, 2006.

Smith has stated in a sworn affidavit that she engaged in no EEO activity prior to April 27, 2005. Def. Ex. 8 ¶ 3. Krupnick claims that he became aware of Smith's EEO charge sometime during the summer of 2005, when an EEO investigator contacted him. Vantrease claims that he became aware of Smith's EEO activity after he had transferred to a position in Washington, D.C. in August 2006.

On June 2, 2005, Krupnick transferred one of Smith's work assignments – involving data input about government vehicles used by agents in Michigan – to the HHS Office of Investigations in Detroit. Krupnick has stated that the official in charge of the Detroit office contacted him and suggested that it would be more efficient to have the task done locally in Detroit. Smith contends that this work assignment comprised over one-fourth of her duties.

Smith later learned that her position was being phased out. She applied for another position within HHS and was hired an investigations analyst (at the GS-11 pay grade) in April 2006. Vantrease became Smith's new immediate supervisor. He later approved Smith's request for a later start time for her work day.

On June 28, 2006, Vantrease gave Smith a feedback report regarding her performance during her first three months in the new position. The report included a detailed summary of her allegedly low productivity. Vantrease also informed Smith that

3

she needed to use her pass card to exit and leave the office because of tardiness issues. (Another employee, also an African-American female, was also required to use her swipe card because of attendance issues.) The report also indicated that if Smith did not increase her productivity, she might be placed on a performance improvement plan. Smith claims that Vantrease unreasonably required her to produce six to eight "mitigating letters" per week. Smith says that Annette Reed-Davis, another investigations analyst who started about the same time, was at a higher pay grade, had more experience, and was producing about three mitigating letters per week. Smith also claims that Deidra Adams, the senior investigative analyst in Smith's group, was producing only about ten such letters per month – less than three per week.

On July 10, 2006, Smith contacted the EEO office again and alleged that she was being discriminated against in her performance evaluation and working conditions based on her race and that she was being retaliated against because of her 2005 EEO complaint. An EEO counselor was assigned to the case and contacted Smith on July 14, 2006. Smith submitted a formal EEO complaint on July 28, 2006.

On July 31, 2006, Vantrease issued Smith notice of a proposed five-day suspension based on her alleged failure to work a full day on seventeen occasions between April 6, 2006 and July 19, 2006. Vantrease claimed that this punishment was appropriate because this was the second time in an eighteen-month period that Smith had failed to comply with HHS procedures in this regard. Smith defended her conduct by claiming that the Office of Investigations did not have a policy requiring employees to use pass cards when entering or exiting the workplace.

Assistant inspector general Campbell reviewed the matter and notified Smith on

4

November 24, 2006 that she would be suspended, but only for three days. He agreed with Smith that the Office of Investigations did not have a passcard policy but decided to impose a suspension because Smith had once again failed to claim actual compliance with HHS leave procedures. Campbell stated that Smith was being disciplined for not working a full day, not for failing to use her pass card. Smith was suspended from December 5 to 7, 2006.

On June 26, 2007, HHS initiated an administrative investigation of Smith's December 27, 2005 and July 28, 2006 EEO complaints. Smith's discrimination and retaliation claims focused on seven separate HHS actions: (1) the March 2005 suspension decision; (2) the June 2005 transfer of one of her work assignments to Detroit; (3) Vantrease's directive in June 2005 to use her swipe card to record her entrance and exit; (4) the June 28, 2006 performance evaluation and Vantrease's comment about potentially placing Smith in a performance improvement plan; (5) the July 2006 suspension proposal; (6) the December 2006 partial implementation of the July 2006 suspension; and (7) Smith's claim that, beginning on April 4, 2006, Vantrease subjected her to enhanced scrutiny and required her to work more than her colleagues.

Krupnick provided an affidavit for the HHS investigation in which he stated that he had always accommodated Smith's requests to take time off and that he had proposed Smith's suspension in 2005 because none of his employees had ever engaged in attendance-related conduct like Smith's, which he considered egregious and a breach of trust. Krupnick also denied Smith's claim of retaliation. He said he recalled two other instances of attendance-related misconduct during his tenure as a manager in the Chicago office. Both involved female employees, one African-American

5

and one white. Krupnick stated that the African-American employee admitted the misconduct, accepted responsibility, and volunteered to change her hours. Krupnick stated that this employee's attendance issues were less frequent and egregious than Smith's. For these reasons, he gave the employee an oral reprimand. Krupnick stated that the white female employee was suspected of not conducting work and leaving her home when she was supposed to be working from home. Surveillance was initiated and, Krupnick said, confirmed the suspicion. The employee was confronted and was told the agency would pursue terminating her. The employee chose to resign.

On the work assignment issue, Krupnick told EEO investigators that Smith's duties that he had transferred in June 2005 involved a minor task and that a supervisory official in Detroit thought it would be more efficient to have the task done there. Krupnick said he was unaware of any EEO activity by Smith at the time of the reassignment.

In a separate affidavit provided for the investigation, Vantrease stated that he was not involved in Smith's 2005 suspension or in the 2005 decision to transfer one of her work assignments. With regard to the June 2006 performance evaluation, Vantrease stated that he believed that Smith's productivity was significantly below what was acceptable for her grade level. Vantrease also stated that his July 2006 suspension proposal was based on his belief that Smith failed to adhere to her required schedule, even after her hours had been changed, and she had been required to use her swipe card. Vantrease also claimed that Smith was the only employee with a tardiness problem.

Deidra Adams, who like Smith worked as an investigations analyst, also provided

information for the investigation. She stated that despite the fact that Smith was completely new to the position, Vantrease felt Smith needed more output. Contrary to a claim Vantrease had made, Adams said she had not expressed any frustration with Smith's performance. Adams also stated that she felt it would be unfair if Vantrease expected Smith to produce ten to twelve letters per week or even six to eight.

On February 19, 2008, HHS decided that Smith's EEO complaints were unsupported by the evidence and dismissed them. The EEOC affirmed the dismissal on August 25, 2009. Smith then filed the present lawsuit. She continues to work for HHS in the Office of Investigations.

## Discussion

Summary judgment is proper when the moving party shows that there is no genuine dispute over any material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when, based on the record, a reasonable fact finder could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court views the record and draws all reasonable inferences in the light most favorable to the nonmoving party. *Outlaw v. Newkirk*, 259 F.3d 833, 836-837 (7th Cir. 2001).

1.  **Discrimination claims**

Smith has not presented any direct evidence of discrimination based on her race or gender. She must, therefore, prove her claims through the burden-shifting method established by the Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973).

Under the *McDonnell Douglas* approach, Smith bears the initial burden of establishing a *prima facie* case of discrimination by showing that she is a member of a protected class; was performing her job satisfactorily; suffered an adverse employment action; and similarly-situated employees outside of her protected class were treated more favorably. *Antonetti v. Abbott Labs.,* 563 F.3d 587 (7th Cir. 2009); *Goodwin v. Bd. of Trustees of the Univ. of Ill.*, 442 F.3d 611, 617 (7th Cir. 2006). If Smith establishes a *prima facie* case, the burden then shifts to HHS, which must provide a legitimate, nondiscriminatory reason for the actions claimed to be discriminatory. *McDonnell Douglas Corp.*, 411 U.S. at 802. If HHS does this, Smith must then prove that HHS's given reasons were a pretext for discrimination. *Id.* at 804; *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 559 n.2 (7th Cir. 2004). To demonstrate pretext, Smith must show either that it is more likely that a discriminatory reason motivated the HHS than the given nondiscriminatory reason or that HHS's explanations are not credible. *Guerrero v. Ashcroft,* 253 F.3d 309, 313 (7th Cir. 2001).

      a.    **March 2005 suspension**

Smith challenges as discriminatory her March 2005 suspension as well as Krupnick's proposal of that suspension. The suspension without pay amounts to an actionable adverse employment action. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2006).

HHS advised Smith at the time, and contends now, that it suspended her because of her late arrivals and early departures from work. Smith has failed to provide evidence from which a reasonable jury could find that she was meeting HHS's

8

legitimate attendance and work hour expectations.  It is undisputed that Smith was required to work a core schedule.  The evidence – specifically, her pass card activity – showed that she frequently failed to live up to those expectations.  None of the evidence Smith has presented tends to undermine HHS's determination that her pass card records showed that she frequently arrived late and left early without excuse. Smith has contended on various occasions that, because of the possibility of entering or exiting after another employee has swiped her card to open the door, the absence of evidence of her arrival and departure times proves nothing.  This, however, does not deal with the unchallenged evidence that Smith's own swipe card was used to enter late and leave early.

Smith's contention that HHS did not have a policy of requiring employees to swipe in or out likewise misses the point.  HHS did not discipline Smith for failing to use her swipe card; rather, it disciplined her because of what her swipe card showed when she used it.  In sum, Smith has not shown that that there is a genuine issue of fact regarding whether she was performing satisfactorily.

In addition, Smith has failed to provide evidence from which a reasonable jury could find that she was treated less favorably than similarly-situated employees outside of her protected class.  To show that employees are similarly situated in this context, a plaintiff typically must show that she and another employee engaged in similar conduct and that she was treated less favorably.  *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (7th Cir. 2000).  Smith argues that there is no evidence that her managers scrutinized the pass card activities of other employees.  As indicated earlier, this misses the point.  The sanction at issue here is the discipline for alleged tardiness and work

schedule violations, not the mere scrutiny of Smith's records. The record includes evidence of only two other employees (a white woman and an African-American woman) who had attendance issues anything like Smith's. Neither of these employees is sufficiently comparable to permit a reasonable jury to find Smith has met this particular element of a *prima facie* case. First, there is no indication that their attendance issues approached the order of magnitude of Smith's issues. Second, the white female employee accepted responsibility, thus differentiating her from Smith in a material way. Third, the other employee is a member of the same protected classes as Smith, so any comparison between that employee and Smith does not tend to show discrimination based on Smith's race or gender. In any event, that employee was threatened with termination – a sanction more severe than Smith's suspension – and then resigned.

Smith may have a viable claim that HHS did not treat her fairly, but the wisdom of her employer's action is not the issue here. *See, e.g., Gates v. Caterpillar*, 513 F.3d 680, 689 (7th Cir. 2008). Because no reasonable jury could find in Smith's favor on key elements of a *prima facie* case of discrimination, HHS is entitled to summary judgment on this claim.

      b.    **Transfer of assignment**

Smith also challenges the transfer of one of her job responsibilities in June 2005. This does not constitute an actionable adverse action. An adverse employment action must be materially adverse, meaning that it must be more than an mere inconvenience or a significant change in work responsibilities. *Hilt-Dyson v. City of Chicago*, 282 F.3d

456, 466 (7th Cir. 2002). Smith has offered no evidence that having this particular work responsibility removed caused her any adverse effect – for example, a loss of advancement opportunities or reduced pay. And even were Smith able to establish this and the other elements of a *prima facie* case, she has offered no evidence from which a reasonable jury could find pretextual HHS's stated reason for the transfer of these job duties – that it was more efficient to track Michigan-based government vehicle usage in Michigan rather than Illinois.

### c. Enhanced scrutiny by Vantrease

Smith alleges that, beginning on April 4, 2006, Vantrease discriminated against her by subjecting her to enhanced scrutiny and requiring her to produce more cases. Under established Seventh Circuit authority, these actions do not amount to actionable adverse employment actions. *See Griffin v. Porter*, 356 F.3d 824, 829 (7th Cir. 2004); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (imposition of harder work assignments typically does not qualify as an adverse employment action).

### d. Pass card requirement

HHS argues that Smith has failed to show that Vantrease's pass card requirement rises to the level of an adverse action or that similarly-situated employees outside of her class were treated more favorably.

An adverse employment action need not be quantifiable in monetary terms, but not everything that causes an employee to be dissatisfied qualifies as an actionable adverse action. *Hilt-Dyson*, 282 F.3d at 466. Smith contends that having to use her pass card each time she entered and exited the office caused her embarrassment and

11

required her to walk a longer distance.  Smith has offered no authority supporting a

contention that these inconveniences are significant enough to constitute actionable

adverse action.

In any event, Smith has offered no evidence from which a reasonable jury could

find that there were any similarly-situated employees – i.e., employees with similar

attendance or equivalent issues – outside of her protected classes who were treated

more favorably.  For these reasons, Smith has offered insufficient evidence to permit a

reasonable fact finder to determine that she has established a *prima facie* case of

discrimination.

      **e.**      **June 2006 performance evaluation**

Smith argues that Vantrease's poor performance evaluation, which mentioned

termination as a possibility if Smith did not improve, was an adverse action that

amounted to discrimination.  The Seventh Circuit has held, however, that letters of

warning and poor performance reviews do not amount to actionable adverse action.

*See Griffin v. Potter*, 356 F.3d at 829.

      **f.**      **2006 suspension**

Smith also challenges her 2006 suspension, which HHS said it imposed for

attendance-related reasons.  This claim fails for the same reasons as Smith's claim

regarding the 2005 suspension.  Smith has failed to show a genuine factual dispute

regarding whether she was performing adequately on the issue of time and attendance,

and she has provided no evidence, aside from her own conclusory statements, to

support a contention that similarly-situated employees outside of her protected class

were treated more favorably.  Specifically, Smith may not have been the only HHS employee with scheduling issues, but she has offered no evidence from which a reasonable jury could find that any particular employees outside her protected classes are valid comparators.  HHS is entitled to summary judgment on this claim as well.

**2.    Retaliation claims**

Smith also claims retaliation for her EEO complaints.  In her brief opposing summary judgment, Smith does not argue her retaliation claim under the direct method of proof but rather relies on the indirect, burden-shifting method of proof.  *See* Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at 11-12 (arguing pretext).

To establish a *prima facie* case of retaliation, Smith must show that she engaged in protected activity; suffered an adverse action even though she was performing her job duties satisfactorily; and no similarly-situated employee who did not engage in protected activity was subjected to the adverse action.  *Mannie v. Potter*, 394 F.3d 977, 984 (7th Cir. 2005).  The adverse action must be material, meaning that it must be significant enough to dissuade a reasonable employee from engaging in the protected activity.  *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006).  If Smith establishes a *prima facie* case, the burden then shifts to HHS, which must provide evidence of a "non-invidious" reason for the employment action at issue.  If HHS meets this burden, the burden shifts back to Smith to demonstrate that HHS's given reason is pretextual.  *Mannie*, 394 F.3d at 984.

In seeking summary judgment on Smith's retaliation claim, HHS argued, among other things, that Smith "has no evidence . . . that similarly situated employees outside

of her protected class were treated more favorably." Def.'s Mem. in Support of Mot. for Summ. J. at 12. In her response, Smith offered no evidence to contradict HHS's contention and thus conceded the point.

This concession aside, Smith has offered no evidence from which a reasonable jury could conclude that there was any similarly situated employee who had not complained of discrimination and was treated better than Smith. To be similarly situated, employees must be directly comparable in all material respects. *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 531-32 (7th Cir. 2003).

With regard to her work schedule suspensions and pass card use requirements, Smith has identified no employees who had not engaged in protected activity and who had attendance issues similar to hers but were treated better. The only evidence in the record in this regard involves the two employees identified earlier. Each was confronted directly and each effectively admitted the violation – one via a direct admission, and the other via her resignation after being told she would be fired. There is no basis on which a reasonable jury could find that Smith is similarly situated to the first (whose attendance issues, the record indicates, were nothing like Smith's) or that she was treated worse than the second (who, rather than being given a second chance, was told she would be fired).

Smith likewise has not presented evidence from which a reasonable jury could find that there were similarly situated employees who were treated better than her with regard to the alleged enhanced scrutiny and elevated production requirements. In particular, she identifies no other worker who had the same sort of prior productivity and disciplinary issues as she who was treated better in this regard. Thus even if Smith had

14

not conceded this point by failing to address HHS's arguments, she could not avoid summary judgment because she cannot meet this element of a *prima facie* case.

Because Smith has failed to establish a *prima facie* case, the Court need not consider the issue of pretext.

## Conclusion

For the reasons stated above, the Court grants defendant's motion for summary judgment [docket no. 25] and directs the Clerk to enter judgment in favor of defendant.

                                            MATTHEW F. KENNELLY
                                            United States District Judge

Date: August 17, 2011